XIUYUAN HU (SBN 331041)
HU LLP
2534 Hepburn Street
South El Monte, California 91733
Telephone: (626) 283-3653
E-mail: tonyhu@hullp.com

Attorney for Petitioner KECE ZENG

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KECE ZENG, A# 234-611-952,<br><br>Petitioner,<br><br>v.<br><br>MARK BOWEN, WARDEN, ADELANTO ICE PROCESSING CENTER; LOS ANGELES FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID VENTURELLA, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY; TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES,<br><br>Respondents. | Case No.: ____________________<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 (CHALLENGING DETENTION WITHOUT PRE-DEPRIVATION PROCESS)** |

# PETITION FOR WRIT OF HABEAS CORPUS

28 U.S.C. § 2241

Dated: November 16, 2026

PETITIONER KECE ZENG respectfully petitions for a writ of habeas corpus under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment. This is a narrow challenge to the July 23, 2026 deprivation of Petitioner's liberty without advance notice or a meaningful opportunity to be heard. It does not ask the Court to enforce its prior conditional judgment, to review the September 16, 2026 bond decision, or to reweigh any Matter of Guerra factor.

The Government knowingly permitted Mr. Zeng to live openly in the United States for more than two years while his timely affirmative asylum application remained pending and while USCIS granted him employment authorization. It then arrested him, without pre-deprivation notice or a hearing, while he was openly taking a domestic flight. Those facts are materially analogous to Xu v. Warden Adelanto ICE Processing Center, No. 5:26-cv-05629-ACCV, Dkt. 12 (C.D. Cal. Oct. 30, 2026) ("Xu Order"), in which this District ordered immediate release notwithstanding a later § 1226(a) bond hearing. A true and correct copy of the Xu Order is attached as Exhibit A.

## I. JURISDICTION, VENUE, AND RELATED CASE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2241 because Petitioner is in federal custody and challenges that custody as contrary to the Fifth Amendment. 28 U.S.C. § 2241(c)(1), (3).

2. Venue is proper in this District because Petitioner remains in ICE custody in the Central District of California, and the responsible ICE officials exercise custody authority in this District. Petitioner has remained continuously in ICE custody since July 23, 2026.

3. This case is related to Zeng v. Bowen, No. 5:26-cv-05044-SK (C.D. Cal.) ("Prior Case"). In the Prior Case, the Court conditionally granted alternative relief and ordered release unless Petitioner received a § 1226(a) bond hearing with seven days' written notice. The Court later denied an ex parte application to enforce that judgment after reviewing the completed bond hearing. The September 16, 2026 custody-redetermination decision, the September 3, 2026 conditional order and judgment, and the October 5, 2026 enforcement order are attached collectively as Exhibit G.

4. This Petition does not seek reconsideration of the Prior Case, enforcement of the conditional judgment, review of the Immigration Judge's September 16, 2026 decision, or review of the weight given to any custody factor. The Prior Case did not adjudicate the distinct issue presented here: whether ICE could seize Petitioner on July 23, 2026 after knowingly allowing him to remain at liberty for more than two years, without pre-deprivation notice, a hearing, or any identified material change in circumstances.

5. The Prior Case's conditional order expressly stated that the Court retained jurisdiction over a new petition filed by Petitioner in this District while he remained in

continuous federal custody based on the same underlying events. This Petition is submitted with full disclosure of the Prior Case and is directed only to the antecedent, unadjudicated constitutional injury.

6. Section 1226(e) does not bar jurisdiction. Petitioner challenges the constitutional adequacy of the arrest-and-detention procedure—not a discretionary custody determination. See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209, 1213 (9th Cir. 2022).

## II. PARTIES

7. Petitioner Kece Zeng is a citizen of the People's Republic of China, A# 234-611-952. He has remained in ICE custody continuously since July 23, 2026.

8. Respondent Mark Bowen is the Warden of the Adelanto ICE Processing Center and is sued in his official capacity as Petitioner's immediate custodian.

9. Respondent Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement, exercises authority over Petitioner's detention and is sued in an official capacity.

10. Respondents David Venturella, Acting Director of U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary of Homeland Security; and Todd Blanche, Attorney General of the United States, are sued in their official capacities. Any successor is automatically substituted under Federal Rule of Civil Procedure 25(d).

## III. EVIDENTIARY BASIS

11. Petitioner submits concurrently the Declaration of Kece Zeng. It is based on personal knowledge and identifies the materials incorporated as Exhibits B through F.

12. Exhibit B is Petitioner's Form I-94, reflecting his lawful March 13, 2024 admission in B-2 status and authorization to remain through September 11, 2024. Exhibit C contains a USCIS I-589 receipt notice and Employment Authorization Document. Exhibit D is the Form I-213 describing ICE's encounter with Petitioner at LAX. Exhibit E contains selected business and tax records; the taxpayer-identification information in the tax record is redacted. Exhibit F contains selected church records. Exhibit G contains the September 16, 2026 custody-redetermination decision and publicly filed orders in the Prior Case, of which the Court may take judicial notice.

## IV. FACTUAL BACKGROUND

### A. The Government knowingly allowed Petitioner to live openly in the United States for more than two years.

13. Petitioner lawfully entered the United States at Los Angeles International Airport on March 13, 2024 in B-2 status. Zeng Decl. ¶¶ 2-3, Ex. B.

14. Before his authorized stay expired, USCIS received Petitioner's affirmative Form I-589 application for asylum and withholding of removal on July 4, 2024. The application remained pending, and USCIS later granted him employment authorization. Zeng Decl. ¶¶ 4-5, Ex. C.

15. Petitioner lived openly under his true identity, used that identity in immigration filings and business records, operated a restaurant business in Southern California, paid taxes, and participated in his church community. Zeng Decl. ¶¶ 6-8, Exs. E-F.

16. Petitioner has no criminal history. Before detention, he had never been arrested, charged, or convicted of a crime in the United States. Zeng Decl. ¶ 8.

17. During the more than two years between Petitioner's entry and ICE's arrest, the Government had his pending asylum application, his employment-authorization record, and his identifying information. It elected not to detain him and allowed him to build a life in the community.

**B. ICE arrested Petitioner without advance notice or a hearing.**

18. On July 23, 2026, Petitioner went to LAX to board United Airlines Flight UA1169 from Los Angeles to Honolulu, Hawaii. It was a domestic flight. Petitioner traveled under his true identity, carried his genuine passport, cooperated with officers, and did not run or resist. Zeng Decl. ¶¶ 9-10, Ex. D.

19. The Form I-213 confirms that ICE acted on Petitioner's itinerary, encountered him at the gate for the domestic Honolulu flight, and arrested him without incident. Zeng Decl. ¶ 10, Ex. D.

20. Before July 23, 2026, ICE gave Petitioner no notice that it intended to arrest or detain him, no explanation of a claimed change in circumstances, and no opportunity to submit evidence or be heard before deprivation of his liberty. Zeng Decl. ¶¶ 11-12.

21. Petitioner is unaware of any material change in his circumstances between the time USCIS granted him employment authorization and the date ICE arrested him. He did not commit a crime, fail to appear for any immigration obligation, conceal his identity, or violate any prior condition of release. Zeng Decl. ¶ 12.

22. Petitioner has remained continuously detained since July 23, 2026. Zeng Decl. ¶ 13.

**C. The completed bond proceedings do not cure the pre-deprivation violation.**

23. Petitioner received a custody hearing after detention. The September 16, 2026 hearing occurred only because this Court conditionally granted alternative relief in the Prior Case. The Immigration Judge found no danger but denied release on flight-risk grounds. Zeng Decl. ¶ 13; Ex. G.

24. Petitioner has pursued administrative review of the completed custody decision. But that review is not the subject of this Petition and cannot retroactively provide the notice and opportunity to be heard that were absent before ICE arrested him.

25. The October 5, 2026 order in the Prior Case addressed a distinct question: whether the September 16 hearing complied with the Court's conditional judgment and whether the Court could review the discretionary outcome of that hearing. It did not decide whether ICE's July 23 seizure, before any hearing, violated procedural due process. Ex. G.

**D. Zeng is materially analogous to Chenxing Xu.**

26. In Xu, the petitioner entered the United States in April 2024 on a B-2 visa, timely filed an affirmative asylum application, received employment authorization, had no criminal history, and lived openly at liberty while the asylum application remained pending. ICE arrested her in September 2026 at an airport while she was attempting to board a domestic flight. Xu Order at 1-2, Ex. A.

27. The Xu court held that the Government's deliberate acquiescence in the petitioner's liberty, combined with the absence of a pre-deprivation hearing or material change in circumstances, created a protected liberty interest that could not be extinguished without due process. It ordered immediate release even though Petitioner had already received a § 1226(a) bond hearing. Id. at 4-9, Ex. A.

28. Zeng's period of liberty is virtually the same: he entered in March 2024 and ICE arrested him in July 2026, just over two years and four months later. Like Xu, he filed asylum before expiration of authorized stay, obtained work authorization, had no criminal history, lived openly in the community, and was arrested while taking a domestic flight. The slight difference in months does not meaningfully distinguish his liberty interest, and no minimum-duration threshold appears in Xu or in the governing due-process analysis.

## V. CLAIM FOR RELIEF

**Fifth Amendment Procedural Due Process: Detention Without Pre-Deprivation Notice or Hearing**

29. Petitioner incorporates paragraphs 1 through 28.

30. Freedom from physical restraint lies at the heart of liberty protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690, 693 (2001).

31. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Court considers the private interest, the risk of erroneous deprivation and the value of additional procedures, and the Government's interest and administrative burden.

32. Petitioner's liberty interest is substantial. He was not merely present in the country: the Government knew he had a pending affirmative asylum application,

granted him employment authorization, and then permitted him to live and work openly in the community for more than two years. Those circumstances gave rise to a protected interest in continued liberty. Xu Order at 5-6, Ex. A; Gagik T. v. Chestnut, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3-5 (E.D. Cal. June 25, 2026).

33. The risk of error was acute. No neutral official considered, before the arrest, whether detention was warranted after the Government's lengthy decision to leave Petitioner at liberty. Petitioner was given no notice, no statement of changed circumstances, no chance to offer proof of his ties and willingness to comply, and no pre-deprivation hearing.

34. The Government had readily available, less restrictive safeguards: advance notice, an opportunity to respond, and a neutral determination whether a material change in circumstances justified taking Petitioner from the community into custody. Those safeguards impose a modest burden compared with civil incarceration.

35. A later bond hearing cannot cure the completed violation. As Xu held, a post-detention hearing cannot prevent the erroneous liberty deprivation already suffered, and a court may still give effectual relief by restoring the petitioner to the status quo through release. Xu Order at 4-8, Ex. A.

36. That rule is particularly important here. At the September 16 hearing, the post-deprivation procedure placed the burden on Petitioner to prove he was not a flight risk. Whatever the merits of that later hearing, it did not give Petitioner the constitutionally required opportunity to contest his initial seizure before he lost his liberty.

37. The October 5 order in the Prior Case does not foreclose this claim. That order correctly held that an outcome-dependent challenge to the post-deprivation bond determination generally requires BIA review and cannot be used to obtain federal reweighing of the Guerra factors. This Petition seeks neither. It challenges a prior constitutional injury—detention without pre-deprivation process—and asks for the direct restorative remedy recognized in Xu.

## VI. EXHAUSTION IS EXCUSED

38. Section 2241 contains no statutory exhaustion requirement, and any exhaustion obligation here is prudential, not jurisdictional. Laing v. Ashcroft, 370 F.3d 994, 997-1000 (9th Cir. 2004); Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017).

39. Exhaustion is inadequate and futile for this particular claim. The Board cannot retrospectively give Petitioner advance notice or a hearing before the July 23 arrest, and it cannot provide the habeas remedy of restoring Petitioner to the status quo through direct release. Xu therefore exercised discretion to excuse exhaustion even after a bond hearing. Xu Order at 3-4, Ex. A.

40. The reasons given for enforcing exhaustion in the October 5 enforcement order do not apply to this claim. Those reasons concerned direct review of a completed bond hearing, including the agency's evaluation of evidence and discretionary risk factors. This claim lies outside the agency's competence because it challenges the absence of pre-deprivation process itself.

## VII. REQUESTED RELIEF

41. The appropriate remedy is release, which most nearly restores Petitioner to the status quo before ICE took him into custody. Xu Order at 7-9, Ex. A. A new bond hearing would be an inadequate substitute because it cannot prevent or undo the completed deprivation.

42. Petitioner asks the Court to order immediate release subject only to any conditions that existed before detention, or such reasonable noncustodial conditions as the Court deems necessary; to direct return of property still held by ICE; and to require a prompt status report confirming compliance.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court:

A. Assume jurisdiction over this Petition;

B. Declare that Petitioner's July 23, 2026 detention without pre-deprivation notice or a hearing violated the Fifth Amendment;

C. Issue a writ of habeas corpus ordering Petitioner's immediate release from ICE custody, subject only to any conditions in place before detention or reasonable noncustodial conditions the Court deems appropriate;

D. Order ICE to return any property it continues to hold from Petitioner's arrest and processing;

E. Require Respondents to file a compliance statement within three days of Petitioner's release; and

F. Grant such other and further relief as is just and proper.

Dated: November 16, 2026

Respectfully submitted,

/s/ Xiuyuan Hu
XIUYUAN HU, ESQ.
HU LLP
Attorney for Petitioner KECE ZENG

## VERIFICATION

I, Kece Zeng, A-Number 234-611-952, am the Petitioner in this action. I have read the foregoing Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and know its contents.

The factual statements in the Petition are true and correct based on my personal knowledge, except for matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 16, 2026, at Adelanto, California.

/s/ Kece Zeng

______________________________

KECE ZENG
A# 234-611-952

# DECLARATION OF KECE ZENG IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I, KECE ZENG, declare as follows:

1. I am the Petitioner in this action. I have been in ICE custody continuously since July 23, 2026. I have personal knowledge of the facts in this declaration and could testify to them competently if called as a witness.

2. I am a citizen of the People's Republic of China. I entered the United States lawfully at Los Angeles International Airport on March 13, 2024, using a valid B-2 visitor visa.

3. My Form I-94 authorized me to remain in the United States through September 11, 2024. A true and correct copy of my Form I-94 is attached as Exhibit B.

4. Before my authorized stay expired, I applied affirmatively for asylum with USCIS. USCIS received my Form I-589 application on July 4, 2024. A true and correct copy of the USCIS receipt notice is attached as part of Exhibit C.

5. My asylum application has remained pending. USCIS granted me employment authorization based on the pending application. A true and correct copy of my Employment Authorization Document is attached as part of Exhibit C.

6. After receiving work authorization, I lived openly and operated a restaurant business in Southern California. I used my true identity in my immigration filings, business activities, tax filings, and travel. Selected business and tax records are attached collectively as Exhibit E.

7. Before ICE detained me, I participated in the Ling Dong Chinese Hope Baptist Church, operated my business, and had an established residence in Southern California. I was baptized there on or about September 15, 2024. Selected church records are attached collectively as Exhibit F.

8. I have never been arrested, charged with, or convicted of any crime in the United States.

9. On July 23, 2026, I went to LAX to take United Airlines Flight UA1169 from Los Angeles to Honolulu, Hawaii. This was a domestic trip within the United States. I traveled openly under my own name, carried my genuine passport, cooperated with ICE officers, and did not run or resist.

10. A true and correct of the Form I-213 in my immigration record is attached as Exhibit D. It confirms that ICE learned of my LAX-to-Honolulu itinerary and encountered me at the gate for United Airlines.

11. Before ICE arrested me on July 23, 2026, no one gave me advance notice that ICE intended to arrest or detain me. No one told me that any material change in my circumstances required detention. I was not given an opportunity to submit evidence, explain my circumstances, or be heard by a neutral decisionmaker before ICE took me

into custody.

12. I am unaware of any material change in circumstances that led ICE to detain me. Between the time USCIS granted my employment authorization and the date of my arrest, I did not commit a crime, fail to appear for an immigration obligation, conceal my identity, or violate any prior condition of release.

13. I have remained in ICE custody continuously since my arrest. I received later custody hearings, but those hearings occurred only after I had already lost my liberty. At the September 16, 2026 hearing, the Immigration Judge found that I was not a danger but denied release on flight-risk grounds. I am not asking this Court to reweigh that flight-risk determination or to decide whether the Immigration Judge should have granted bond.

14. I want to pursue my asylum case and comply with all immigration requirements. If released, I will attend every hearing and ICE appointment and comply with reasonable noncustodial conditions, including reporting, electronic or telephonic check-ins, travel restrictions, or monitoring if ordered.

15. Exhibits B through F are submitted without redaction, except for taxpayer-identification information in the tax record within Exhibit E. That limited redaction does not alter the facts stated in this declaration.

16. I respectfully ask the Court to order my release because ICE took away my liberty without warning, a hearing, or a chance to show that detention was unnecessary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 16, 2026, at Adelanto, California.

/s/ Kece Zeng

KECE ZENG
Petitioner

# EXHIBIT A

Chenxing Xu Order Granting
Petition for Writ of Habeas Corpus

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHENXING XU,

Petitioner,

v.

WARDEN ADELANTO ICE PROCESSING CENTER, *et al.*,

Respondents.

Case No. 5:26-cv-05629-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On September 24, 2026, Petitioner Chenxing Xu ("Petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), challenging her detention as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. 1 at 12.) For the reasons stated below, the Court grants the Petition and orders Respondents to immediately release Chenxing Xu (A#242359379) from the Adelanto ICE Processing Center.

## II. FACTUAL AND LEGAL BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. (Dkt. 1 at 22.) Petitioner entered the United States through the Los Angeles International Airport in Los Angeles, California, on April 18, 2024, on a B-2 nonimmigrant visa set to expire on October 18, 2024. (Dkt. 1 at 3-4.) On August 23, 2024, Petitioner filed an I-589

Dockets.Justia.com

Application for Asylum that remains pending. (Dkt. 10-1 at 3.) On February 5, 2025, Petitioner filed an I-765 form for work authorization that was later approved on February 24, 2025. (*Id.*) Petitioner has no criminal history. (*Id.*)

On September 4, 2026, Petitioner was arrested at Ontario International Airport in Ontario, California as part of a targeted immigration enforcement operation. (Dkt. 10-1 at 2.) Petitioner was attempting to board a flight to Seattle when authorities detained her. (*Id.*) Petitioner has remained detained at Adelanto ICE Processing Center since this date. (Dkt. 1 at 4.)

On September 29, 2026, Petitioner had a bond hearing. (Dkt. 10-2 at 1.) The Immigration Judge denied Petitioner's bond request after concluding she was a flight risk. (*Id.*) Petitioner has not filed an appeal with the Board of Immigration Appeals ("BIA").

Petitioner filed a "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Supporting Memorandum" and "Request for Immediate Release, Narrowly Tailored Prospective Relief, and Expedited Consideration" on September 24, 2026. (Dkt. 1.) Petitioner alleges the following in support of her argument that her bond hearing was unlawful: (1) the Court should waive prudential exhaustion; (2) Respondents must identify the authority for Petitioner's arrest; (3) continued detention requires applicable statutory authority and sufficient process; (4) Fifth Amendment Due Process violation; and (5) irreparable harm and expedited consideration. (Dkt. 1 at 9–13.)

Respondents filed "Federal Respondents' Answer to Petition for Writ of Habeas Corpus" on October 1, 2026. (Dkt. 10.) Respondents argue: (1) Petitioner has not exhausted administrative remedies; and (2) the Court should not reweigh the evidence considered by the IJ at the bond hearing. (Dkt. 10 at 2–5.) Petitioner filed "Petitioner's Reply in Support of Petition for Writ of Habeas Corpus" on October 2, 2026. (Dkt. 11.) Petitioner's Reply largely reiterates the arguments she made in the Petition and clarifies that she challenges not the outcome of the bond hearing, but the failure to

provide her with a pre-deprivation hearing prior to her arrest. (*Id.*)

## III. ANALYSIS

### A. Habeas Jurisdiction

A writ of habeas corpus may be granted to any petitioner who demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B. Exhaustion

As an initial matter, the Court finds exhaustion of administrative remedies is not warranted. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). However, a court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted).

///

Here, administrative remedies would be "inadequate and futile," as a post-deprivation bond hearing "would not address the propriety of Petitioner's claim that [she] was not afforded constitutionally adequate procedural safeguards prior to the deprivation of h[er] liberty interest." *R.N.G. v. Semaia*, No. EDCV 26-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026). Additionally, Petitioner would "suffer significant irreparable harm" in the form of continued detention "if forced to wait for an administrative appeal to be decided." *Villa v. Mullin*, No. EDCV 26-01690-JDE, 2026 WL 1583941, at *4 (C.D. Cal. June 2, 2026). For the same reason, the alternative remedy of a post-deprivation bond hearing is also inadequate to redress Petitioner's due process challenge to her detention without adequate notice and a pre-deprivation hearing. *See Gudavasov v. Marin*, No. EDCV 26-00541-AH-MBKx, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing"). Accordingly, the Court exercises its discretion to waive the prudential exhaustion requirement for Petitioner.

**C. Petitioner's Due Process Claims**

Petitioner argues her ongoing detention since September 4, 2026, violates her procedural due process rights under the Fifth Amendment. (Dkt. 1 at 12.) Respondents assert that Petitioner is lawfully detained as they have already received a bond hearing. (Dkt. 10 at 2.) The Court agrees with Petitioner.[1]

As an initial matter, the Court rejects Respondents' argument that Petitioner's bond hearing precludes our review, and the bond hearing moots her claims. (Dkt. 10 at 4.) A claim is moot only when "there is no longer a possibility" that a litigant "can obtain relief for his claim." *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). "[W]hen, by virtue of an intervening event, a court [ ] cannot 'grant any effectual relief whatever' in favor of the [petitioner]," the proceeding should be

---

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claims.

dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation omitted). Here, Petitioner's bond hearing does not preclude the Court from granting any effectual relief. Indeed, the Court can still grant the only relief that Petitioner seeks in the Petition—her outright release. Additionally, the Court is not "reweigh[ing] the evidence considered by the IJ at the bond hearing" as Respondents assert. (Dkt. 10 at 4.) Petitioner filed her Petition before her bond hearing, so it does not address that proceeding. The Court's reasoning rests solely on the arguments presented in Petitioner's pre-bond hearing Petition.

The Court therefore turns to the merits of Petitioner's due process claim. Courts in this district have previously found that, under the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) framework, noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g., Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the noncitizen's remaining at liberty in the United States. *See Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but

was never detained, had a protected liberty interest in remaining free). This case is comparable. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after her B-2 visa expired, but the Government elected not to detain her and instead granted her employment authorization while her asylum case remained pending. (Dkt. 10-1 at 3.) For the past two years, Petitioner has proceeded with her asylum claims and has had no arrests or convictions. (*Id.*) Throughout this time, the Government knew exactly where Petitioner was but permitted her to remain at liberty. Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

Respondents do not appear to dispute that, under *Mathews*, due process ordinarily requires pre-deprivation notice and a hearing prior to detaining someone in Petitioner's circumstances. In fact, they offer no argument on this point. (*See* Dkt. 10) Instead, Respondents only argue that Petitioner’s only recourse is through an appeal of their bond hearing to the Board of Immigration Appeals (“BIA”) and this Court cannot re-weigh evidence considered by the Immigration Judge at the bond hearing. (Dkt. 10 at 1–5.)

However, Respondents’ arguments mischaracterize the argument it seeks to rebut. As previously stated, the question before us—and the one Petitioner raises—is not whether the bond hearing was adequate, but what recourse is available to Petitioner absent pre-deprivation notice and a hearing. The Court therefore rejects Respondents' inapposite arguments as unresponsive to the relevant question before us.

Most courts to address this issue have “concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.” *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an “increasing wave of district courts have concluded, a post-hoc bond hearing” is insufficient to remedy the denial of a petitioner's right to pre-

deprivation process and ordering the petitioner's release); *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *6 (C.D. Cal. July 14, 2026) (same).

These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)); *see also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); *see also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.' " *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*,

No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Moreover, Petitioner was likely prejudiced by being forced to litigate the legality of her confinement from inside a detention center, approximately three weeks after she was detained. As numerous courts have recognized, detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing. *See generally Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005) (discussing the difficulty of obtaining legal representation for an "incarcerated immigrant"); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (discussing the "substantial challenges" faced by a noncitizen attempting to litigate a removal case while detained). Here, Petitioner explained how her language barrier has hampered her ability to understand the reasons for her custody and exercise available procedures. (Dkt. 1 at 12.) Under these circumstances, the Government's denial of pre-deprivation process certainly "might" have led to an erroneous deprivation of her liberty. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the petitioner was entitled to habeas relief where he was prejudiced by an IJ's application of the incorrect standard of proof at his bond hearing because it "might" "have affected the outcome of the bond hearing").

Accordingly, the Court finds that Petitioner's detention violated procedural due process and she is entitled to habeas relief.

## IV. CONCLUSION

For the reasons stated, the COURT GRANTS the Petition and ORDERS:

///

(1) Respondents to release Petitioner release Chenxing Xu (A#242359379) immediately under the same conditions as Petitioner was on prior to Petitioner's detention;

(2) Respondents to return all property to Petitioner that was confiscated from Petitioner when Petitioner was arrested and processed into detention;

(3) Respondents to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4) That any future enforcement actions after Petitioner's release must comply with Due Process requirements.

DATED: October 30, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge

# EXHIBIT B

Form I-94

For: **KECE ZENG**

U.S. Customs and Border Protection
*Securing America's Borders*

## Most Recent I-94

**Admission (I-94) Record Number : 805691536A3**
**Most Recent Date of Entry: 2024 March 13**
**Class of Admission : B2**
**Admit Until Date : 09/11/2024**
**Details provided on the I-94 Information form:**

| | |
|---|---|
| Last/Surname : | ZENG |
| First (Given) Name : | KECE |
| Birth Date : | 1984 October 05 |
| Document Number : | EJ2078661 |
| Country of Citizenship : | China |

Get Travel History

▶ **Effective April 26, 2013, DHS began automating the admission process. An alien lawfully admitted or paroled into the U.S. is no longer required to be in possession of a preprinted Form I-94. A record of admission printed from the CBP website constitutes a lawful record of admission. See 8 CFR § 1.4(d).**

▶ **If an employer, local, state or federal agency requests admission information, present your admission (I-94) number along with any additional required documents requested by that employer or agency.**

▶ **Note: For security reasons, we recommend that you close your browser after you have finished retrieving your I-94 number.**

OMB No. 1651-0111
Expiration Date:

For inquiries or questions regarding your I-94, please click here

Accessibility | Privacy Policy

由 reCAPTCHA 提供保护

隐私权 - 使用条款

# EXHIBIT C

USCIS I-589 Receipt Notice
and Employment Authorization Document

Department of Homeland Security
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| Receipt Number | Priority Date | Case Type |
|---|---|---|
| MGL2449723183 | | I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
| Received Date 07/04/2024 | | Applicant A234 611 952 ZENG, KECE |
| Notice Date 07/04/2024 | Page 1 of 2 | |

KECE ZENG
c/o KECE ZENG
18442 SANTAR STREET
ROWIAND CA 91748

**Notice Type:** Receipt Notice

*** ACKNOWLEDGEMENT OF RECEIPT ***

Your complete Form I-589, Application for Asylum and for Withholding of Removal was received and is pending as of 07/04/2024.

You may remain in the United States until your asylum application is decided. Having a pending asylum application with USCIS does not preclude U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) from placing you into removal proceedings. If you wish to leave the United States while your application is pending, you must obtain advance parole or, for Temporary Protected Status (TPS) recipients, approval of Form I-512T, Authorization for Travel by a Noncitizen to the United States (sometimes referred to as MTINA TPS travel authorization), from USCIS or you may be considered to have abandoned your asylum application. You must report a change of address to USCIS within 10 days of moving by following the instructions on the How to Change Your Address webpage (https://www.uscis.gov/addresschange). Changing your address with the U.S. Postal Service will not change your address with USCIS.

BIOMETRICS APPOINTMENT AND ASYLUM INTERVIEW NOTICES:

You will receive a notice informing you when you and those listed on your application as a spouse or child dependent must appear at an Application Support Center (ASC) for biometrics collection. You will also receive a notice informing you when you and those listed on your application as a spouse or child dependent must appear for an asylum interview. Those notices will contain instructions for what to bring to your ASC appointment and what to bring to your asylum interview.

**WARNING: Failure to appear at the ASC for biometrics collection or for your asylum interview may affect your eligibility for employment authorization and may also result in the dismissal of your asylum application or referral of your asylum application to an immigration judge.**

EMPLOYMENT AUTHORIZATION:

You may file a Form I-765, Application for Employment Authorization, based on your pending asylum application 150 days after you filed your asylum application. You are not eligible to receive an Employment Authorization Document (EAD) until your asylum application has been pending for at least another 30 days, for a total of 180 days. 8 CFR 208.7(a)(1). The 150-day waiting period and the 180-day eligibility period, commonly referred to as the 180-Day Asylum EAD Clock, do not include delays that you request or cause while your asylum application is pending with an asylum office or with the Immigration Court. 8 CFR 208.7(a)(2).

Delays requested or caused by the applicant may include:
- A request to transfer a case to a new asylum office or interview location, including when the transfer is based on your change of address;
- A request to reschedule an interview for a later date;
- Failure to appear at an interview or biometrics appointment;
- Failure to provide a competent interpreter at an interview (if required);
- A request to provide additional evidence at or after an interview;
- The submission of large volumes of evidence immediately before an interview that requires a reschedule; and
- Failure to receive and acknowledge an asylum decision in person (if required).

Applicant(s):

| Alien Number | Name |
|---|---|
| A234 611 952 | ZENG, KECE |

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Los Angeles Asylum Office
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 2003
Tustin CA 92781-2003

**USCIS Contact Center: www.uscis.gov/contactcenter**


UNITED STATES OF AMERICA
EMPLOYMENT AUTHORIZATION
Surname
ZENG
Given Name
KECE
USCIS#
234-611-952
Category
C08
Card#
IOE9172099224
Terms and Conditions
None
Date of Birth
05 OCT 1984
Sex
M
Country of Birth
China
Valid From:
01/22/25
Card Expires:
01/21/30
NOT VALID FOR REENTRY TO U.S.


FORM I-766
Rev (12-2021)
52355792
This card is not evidence of U.S. citizenship or permanent residence.
This document is void if altered; and may be revoked by the U.S. Government.
The person identified is authorized to work in the U.S. for the validity of this card.
45C
If found, drop in any US Mailbox. USPS: Mail to 7 Product Way, Lees Summit, MO 64002
IAUSA2346119523IOE9172099224<<
8410054M3001215CHN<<<<<<<<<<<9
ZENG<<KECE<<<<<<<<<<<<<<<<<<<<

# EXHIBIT D

Form I-213

U.S. Department of Homeland Security

# Record of Deportable/Inadmissible Alien

Family Name (CAPS) First Middle: ZENG, KECE

Sex: M | Hair: BLK | Eyes: BLK | Cmplxn:

Country of Citizenship: CHINA, PEOPLES REPUBLIC OF

Passport Number and Country of Issue: EJ2078661

File Number: [redacted] 234 611 952

Height: 66 | Weight: 170 | Occupation: UNR

U.S. Address: 10250 RANCHO RD ADELANTO, CALIFORNIA, 92301, UNITED STATES

Scars and Marks:

Date, Place, Time, and Manner of Last Entry: 03/13/2024 Unknown Time, LAX, B2-Visitor For Pleasure

Passenger Boarded at:

F.B.I. Number: 2MJJNHCP4

☐ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated

Number, Street, City, Province (State) and Country of Permanent Residence:

Method of Location/Apprehension: NCA

Date of Birth: 10/05/1984 Age: 41

Date of Action: 07/23/2026

Location Code: LOS/LOS

At/Near: See I-831

Date/Hour: 07/23/2026 08:59

City, Province (State) and Country of Birth: CHINA, PEOPLES REPUBLIC OF

AR ☒

Form : (Type and No.) Lifted ☐ Not Lifted ☐

By: See Narrative

NIV Issuing Post and NIV Number:

Social Security Account Name: Kece ZENG

Status at Entry:

Status When Found:

Date Visa Issued:

Social Security Number: 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

Length of Time Illegally in U.S.:

Immigration Record: NEGATIVE

Criminal Record:

Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate):

Number and Nationality of Minor Children: None

Father's Name, Nationality, and Address, if Known:

Mother's Present and Maiden Names, Nationality, and Address, if Known:

Monies Due/Property in U.S. Not in Immediate Possession: None Claimed

Fingerprinted? ☐ Yes ☐ No

Systems Checks: See Narrative

Charge Code Words(s): See Narrative

Name and Address of (Last)(Current) U.S. Employer:

Type of Employment:

Salary: Hr

Employed from/to:

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

[redacted]

Left Index fingerprint

Right Index fingerprint



**Body Worn Camera (BWC) Information**

-------------------------------------

**BWC footage was recorded for this enforcement activity.**

**FAMILY INFORMATION**

------------------

**Father:Subject has not provided information for Father.**
**Mother:Subject has not provided information for Mother.**
**Child:Subject does not have children or dependents.**

...(CONTINUED ON I-831)

W. 05564 BARBOUR
Deportation Officer

Alien has been advised of communication privileges ____________ (Date/Initials)

(Signature and Title of Immigration Officer)

Distribution:

Received: (Subject and Documents) (Report of Interview)

Officer:

on: July 23, 2026 (time)

Disposition: Warrant of Arrest/Notice to Appear

Examining Officer: ROBLES, I 6963

**U.S. Department of Homeland Security** **Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| ZENG, KECE | 234 611 952<br>Event No: LOS2607001496 | 07/23/2026 |

SUBJECT HEALTH STATUS
----------------------
The subject claims good health.

CURRENT ADMINISTRATIVE CHARGES
-------------------------------
07/23/2026 - 237a1B - NONIMMIGRANT OVERSTAY

RECORDS CHECKED
[redacted]

ARRESTING AGENTS
-----------------
J 05793 ABCEDEEL12439 LOPEZK. 14322 DE LEONR 11031 ALVAREZ

ARRESTED AT/NEAR
-----------------
1 WORLD WAY, LOS ANGELES, CALIFORNIA, UNITED STATES

RECORD OF DEPORTABLE/EXCLUDABLE ALIEN:
---------------------------------------
Name: ZENG, Kece
A# 234 611 952
DOB: October 05, 1984
COC: CHINA
FBI# 2MJJNHCP4
DNA# F5065734

LEAD DEVELOPMENT:

On July 22, 2026, ZENG came to the attention of ICE Enforcement and Removal Operations (ERO) Los Angeles pursuant to a lead generated by the Pacific Enforcement Regional Center (PERC), following his flight itinerary from Los Angeles International Airport (LAX) to Honolulu International Airport (HNL). Using biographical information, ERO Los Angeles established sufficient reasonable suspicion to encounter and interview ZENG regarding his presence in the United States.

ENCOUNTER DATA:

On July 23, 2026, at approximately 0500 hours, ERO Los Angeles Team 10 arrived at Los Angeles International Airport and contacted LAX Federal Air Marshal Service (FAMS) at Terminal 1. FAMS provided updated information that ZENG will be departing from LAX to HNL via United Airlines flight UA1169 around 0905hrs. FAMS escorted ERO officers to Terminal 6 and stationed near gate 68B.

At approximately 0840hrs, ERO Officers observed a male subject who matched ZENG's description. ERO officers positively identified ZENG using a photograph obtained through a Department of Homeland Security/ICE database and approached him, ERO identified themselves as immigration officers by presenting official DHS issued credentials. ZENG voluntarily admitted that he is a citizen and national of CHINA, he provided a Chinese passport EJ2078661 which matched ZENG's name and date of birth. ZENG was advised that he has overstayed his B2 nonimmigrant visitor status and was presented with a Warrant of Arrest

| Signature | Title |
|---|---|
| W. 05564 BARBOUR | Deportation Officer |

U.S. Department of Homeland Security

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| ZENG, KECE | 234 611 952<br>Event No: LOS2607001496 | 07/23/2026 |

I-200. At approximately 0844hrs, ICE officers placed ZENG under arrest without incident and transported him to the Los Angeles Field Office (LAFO) for processing.

CHARGES OF REMOVABILITY:

ZENG makes no claim/appears to have no claim to USC or LPR status and is amenable to removal pursuant to Section 237(a)(1)(B) of the INA, any alien who was admitted to the United States as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed, or to comply with the conditions of such status, is removable.

IMMIGRATION/CRIMINAL HISTORY:

ZENG, a citizen and national of CHINA, holds no citizenship or nationality in the United States.

On March 13, 2024, United States Customs and Border Protection (USCBP) admitted ZENG to the United States at LAX as a Non-Immigrant Visitor for Pleasure B-2, for a period not to exceed September 11, 2024. ZENG failed to depart.

On July 04, 2024, ZENG filed an Application for Asylum and for Withholding of Removal, Form I-589, with United States Citizenship and Immigration Services (USCIS. The Application is currently pending.

On December 17, 2024, ZENG filed an Application for Employment Authorization, Form I-765, with USCIS. On January 28, 2025, the application was granted.

ADDITIONAL INFORMATION:

ZENG claims father is a citizen and national of China.

ZENG claims mother is a citizen and national of China.

ZENG claims no minor United States children.

ZENG does not claim fear of torture or persecution if returned to his native country of citizenship (CHINA).

ZENG currently has pending applications before USCIS.

ZENG claims no service in the United States Armed Forces.

ZENG claims no gang affiliation.

ZENG claims no medical or mental health issues.

ZENG has no known immigration benefits or protections.

ZENG was offered and declined Incentivized Voluntary Departure (IVD).

DISPOSITION:

ERO Los Angeles issued ZENG, Kece, a Notice to Appear, Form I-862, pursuant to Section 237(a)(1)(B) of the INA and will remain in ERO custody pending his removal proceedings.

DNA Collection Kit #F5065734 administered.

| Signature | Title |
|---|---|
| W. 05564 BARBOUR | Deportation Officer |





Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| ZENG, KECE | 234 611 952<br>Event No: LOS2607001496 | 07/23/2026 |

OTHER IDENTIFYING NUMBERS
--------------------------
ALIEN-234611952
Driver's license issued as REAL ID compliant-W9072850 (UNITED STATES)

| Signature | Title |
|---|---|
| W. 05564 BARBOUR | Deportation Officer |

# EXHIBIT E

Selected Business and Tax Records
(Taxpayer-Identification Information Redacted)

202464212084

# STATE OF CALIFORNIA
*Office of the Secretary of State*
**ARTICLES OF ORGANIZATION**
**CA LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: 202464212084
Date Filed: 10/12/2024

| | |
|---|---|
| **Limited Liability Company Name** | |
| Limited Liability Company Name | Ade Liuzhou Snail Rice Noodles LLC |
| **Initial Street Address of Principal Office of LLC** | |
| Principal Address | 3145 IVAR AVE<br>ROSEMEAD, CA 91770 |
| **Initial Mailing Address of LLC** | |
| Mailing Address | 3145 IVAR AVE<br>ROSEMEAD, CA 91770 |
| Attention | |
| **Agent for Service of Process** | |
| Agent Name | kece zeng |
| Agent Address | 3145 IVAR AVE<br>ROSEMEAD, CA 91770 |

**Purpose Statement**

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**Management Structure**

| | |
|---|---|
| The LLC will be managed by | One Manager |

Additional information and signatures set forth on attached pages, if any, are incorporated herein by reference and made part of this filing.

**Electronic Signature**

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*kece zeng* — Organizer Signature

*10/12/2024* — Date

B3110-9052 10/12/2024 10:49 AM Received by California Secretary of State

Certificate Verification No.: 256356225 Date: 10/14/2024

# 2025 Tax Summary (1120) ADE LIUZHOU SNAIL RICE NOODLES LLC [redacted]

## Federal Information

| | |
|---|---|
| Total Income . . . . . . . . . . . . . . . . . . . | $70,238 |
| Total Deductions . . . . . . . . . . . . . . . . | $61,225 |
| Taxable Income (Loss) . . . . . . . . . . . | $4,843 |
| Total Tax . . . . . . . . . . . . . . . . . . . . . . | $1,017 |
| Overpayment . . . . . . . . . . . . . . . . . . . | $0 |
| Amount Applied . . . . . . . . . . . . . . . . . | $0 |
| Refund . . . . . . . . . . . . . . . . . . . . . . . . | $0 |
| Amount Due . . . . . . . . . . . . . . . . . . . | $1,060 |

## State Information

**State: CA Form: 100**

| | |
|---|---|
| Total Tax . . . . . . . . . . . . . . . . . . . . . . | $824 |
| Overpayment . . . . . . . . . . . . . . . . . . . | $0 |
| Amount Applied . . . . . . . . . . . . . . . . . | $0 |
| Refund . . . . . . . . . . . . . . . . . . . . . . . . | $0 |
| Amount Due . . . . . . . . . . . . . . . . . . . | $894 |

# EXHIBIT F

Selected Church Records

# Certificate of Baptism

受洗证书

曾科策弟兄

于主后 2024 年 9 月 15 日

在爱满地岭东浸信会华恩堂，由 王 岗牧师 奉圣父，圣子，圣灵的名施洗，特此证明

This certifies that Zeng, Kece was baptized on 2024.9.15

Of Ling Dong Chinese Hope Baptist Church

In the name of the Father, and of the Son, and of the Holy Spirit.

牧师 / Pastor

愛滿地嶺東浸信會華恩堂

LING DONG CHINESE HOPE BAPTIST CHURCH

见证人 / Witness

愛滿地嶺東浸信會華恩堂
LING DONG CHINESE HOPE BAPTIST CHURCH
536 N. Poplar Ave.,
Montebello, CA 90640
elldchbc@gmail.com

Date: 08-06-2026

To Whom It May Concern:

I, Rev. Kang Wang, Senior Pastor of Ling Dong Chinese Hope Baptist Church, am writing to confirm that Mr. Kece Zeng has been a faithful member of our church since June 30, 2024.

"Despite the pressure from work, he still makes it a point to attend Sunday worship 2–3 times a month. Furthermore, he faithfully gives his tithes and uses his time to share the gospel of Jesus Christ.

Brother Zeng is usually quiet and reserved, but he does his best within his ability to support the needs of the church. When facing various challenges in life, he seeks help from the church and strives to live according to biblical standards.

The above information is provided by me as Brother Zeng's pastor. If you have any further questions and need to contact me, please call my cell phone at 626-922-5470."

Thank you very much and may God's mercy and grace be with you all the time .

In His love we serve

Rev. Kang Wang

# EXHIBIT G

September 16 Custody Decision
and Prior Habeas Orders

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ADELANTO IMMIGRATION COURT**

Respondent Name:
ZENG, KECE
To:
Hu, Xiuyuan
2534 Hepburn Street
South El Monte, CA 91733

A-Number:
234-611-952
Riders:
In Custody Redetermination Proceedings

Date:
09/16/2026

**ORDER OF THE IMMIGRATION JUDGE**

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because
BOND MEMORANDUM

This bond hearing was held in accordance with District Court order issued September 3, 2026. See Exhs. 2-3. The District Court order did not shift the burden of proof to the Department of Homeland Security. See Exhs. 2-3. Accordingly, the respondent bears the burden of proof to establish that he is not a danger to the community and not a flight risk. See 8 C.F.R. 1236.1(c)(3). A respondent who is a danger to the community shall not be released on bond. See Matter of Urena, 25 I&N Dec. 140, 141 (BIA 2009). Only if an immigration judge first determines that a respondent is not a danger to the community is a flight risk analysis conducted. See Matter of Urena, 25 I&N Dec. at 141-142.

The Court finds the respondent is not a danger to the community. The Department of Homeland Security did not argue the respondent is a danger to the community. Regardless, the respondent has no criminal history. See Exh. 8. Accordingly, the Court finds the respondent met his burden of proof to establish he is not a danger to the community. The Court therefore turns to the flight risk analysis.

The Court finds the respondent's relief application is not merely speculative. See generally Matter of A-L-S-, 29 I&N Dec. 794 (BIA 2026) (Inherent in the concept of flight risk is not only whether the alien will appear at future hearings before the Immigration Judge, but also whether the alien is likely to comply with future orders of the Immigration Judge). In this case, the respondent filed a Form I-589 application for relief before USCIS. See Exh. 7, Tab C. The same was provided for the Court to review. See id. Matter of A-L-S, supra, does not stand for the proposition that a respondent must establish that relief will in fact be granted. Relief, however, must be

more than merely speculative. See generally Matter of A-L-S, 29 I&N Dec. at 797 (wherein the Board of Immigration Appeals found in that case there was nothing in that record to support findings that the respondent is even potentially eligible for relief from removal). Here, the respondent filed a Form I-589, a copy of the same was filed for review. Accordingly, the Court finds the respondent's relief is not merely speculative, in that the record establish he is at least potentially eligible for relief from removal.

The Court considered the respondent's immigration history. See Matter of C-M-M, 29 I&N Dec. 141 (BIA 2025) ("The applicant's extensive and lengthy history of immigration law violations, including multiple removals and illegal reentries, demonstrates that she poses a significant flight risk, such that no monetary bond would be sufficient to ensure her appearance at future immigration hearings and, if necessary, her surrender for removal from this country"). The respondent entered the United States on a valid non-immigrant visa. See Exhs. 1-2, 7 at Tab A. The respondent then overstayed the temporary period in which he was authorized to remain in the United States. See Exh. 7, Tab A (indicating the respondent was admitted until September 11, 2024). The respondent affirmatively filed for asylum before USCIS, which indicates a desire to remain in the United States. See Exh. 7, Tabs B-C. However, that does not automatically equate to establishing that the respondent will comply with all court orders, to include an order of removal should one be issued. See Matter of A-L-S, 29 I&N Dec. at 797 ("Inherent in the concept of flight risk is not only whether the alien will appear at future hearings before the Immigration Judge, but also whether the
alien is likely to comply with future orders of the Immigration Judge").

In determining if the respondent met his burden of proof regarding flight risk, the Court also considered the factors set forth in Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006) (discussing factors to consider when determining whether an alien merits release on bond).

The Court considered the respondent's lack of family ties in the United States and finds this to be a negative flight risk factor. See Matter of Guerra, 24 I&N Dec. at 40. While individuals may have some family abroad, this respondent has identified no family in the United States. The Court considered the limited community support offered in support of the respondent. The record contains only three letters of support of bond. See Exhs. 4-6. There are no letters from any community member related to the respondent's release on bond not affiliated with the respondent's business directly, or as a restaurant industry contact. See Exhs. 4-6. There are two statements from a Reverand Kang Wang, which only certifies the respondent's membership of the Ling Dong Chinese Hope Baptist Church, and his attendance and participation in the church. See Exh. 7 at 35-36 (Batestamp 37-38). The letters do not address any steps the Reverend would take to ensure compliance withcourt orders. see id.

The Court finds that two of the letters in support of bond are from self-interest parties, namely an employee and the respondent's business partner. See Exhs. 5-6. Given the

potential financial impact to these individuals if the respondent were to remain detained, the Court finds they are self-interested parties and as such gives their letters minimal weight. See Mukulumbutu v. Barr, 977 F.3d 924, 927 (9th Cir. 2020) ("The BIA did not err in concluding that the evidence Mukulumbutu provided was entitled to limited weight because the affidavit and letters provided were from interested parties—his father, Boteti's widow, and an acquaintance—none of whom was available for cross-examination."). The Court notes that the respondent's testimony regarding how he knew Ms. Guan and when they met also differed from her letter until confronted with the discrepancies, which also undermines the persuasiveness of her letter in that the Court finds the inconsistencies then call into question how long this witness has known the respondent and nature of their relationship. Regardless, as indicated the Court finds her to be a self-interested party, as she is identified as his employee in her letter, and the respondent referred to her as his co-worker, and as such the Court gives her letter minimal weight.

Notably in this case, a prior Immigration Judge denied bond in part finding the then proffered sponsor was unreliable. See Exh. 7, Tab I. Therefore, the Court finds the respondent was on notice that a reliable sponsor is a significant flight risk factor. See Matter of Dobrotvorskii, 29 I&N Dec. 211 (BIA 2025). With this in mind, the Court turns to the letter from the proffered sponsor and will then address the respondent's request to delay the hearing to seek testimony, even if on the same day, to get testimony from the sponsor who was not present for the bond hearing when it was called on the Court's docket.

The respondent was on notice of the significance of a reliable sponsor and had time and opportunity to obtain a statement from a sponsor as established by the fact the respondent obtained a statement from a sponsor. See Exh. 4. The respondent was aware this was a factor the Court would consider. The respondent's sponsor wrote "If [the respondent] chooses to reside with me, I will assist him with housing and other basic needs while his immigration proceedings are pending. I will also encourage and assist him in attending all Immigration Court hearings, ICE appointments, and other required proceedings. I understand the importance of his compliance with all conditions of release and willing to help him remain in contact with his attorney and the appropriate immigration authorities." Exh. 4 at 2. Further, he stated he was willing to undertake the responsibility to ensure the respondent would comply with all requirements. See id. The respondent testified on September 16, 2026, that he would reside in his own home, not with his sponsor. The respondent is not required to reside with a sponsor. The issue for this Court is that the sponsor's letter indicates he will assist the respondent if the respondent resides with him. See Exh. 4 at 2. Further, the vague statement of taking responsibility for compliance with all requirements fails to specify what specific steps this sponsor would take to ensure compliance with all orders, not just attending hearing. For example, how the sponsor could, or would, ensure the respondent would comply with a removal order should one ultimately be issued. See Matter of Dobrotvorskii, 29 I&N Dec. at 213 (citing Matter of R-A-V-P, 27 I&N Dec. 803, 806 (BIA 2020). The Court finds the respondent had time and opportunity to provide a detailed statement from his sponsor regarding this issue prior

to the bond hearing on September 16, 2026, particularly here where the respondent was on notice of the importance of a reliable sponsor and as such was on notice of the importance of details in such a statement in light of the prior bond order and legal citation therein to published Board precedent.

The respondent, through counsel, requested additional time to call the sponsor to testify, to include if only trailing the case to the end of the morning docket. The respondent's counsel was aware of the hearing date and time. Importantly, the respondent's counsel was on notice of the importance of a sponsor both in light of published Board precedent, cited herein above, and the prior Court order on bond. Further, the respondent had time and opportunity to submit a lengthy detailed statement from the sponsor but did not do so. Each case is decided on its own, and it is the facts of this case the Court finds did not merit delaying the hearing further on the Court's docket to call for testimony--again because the respondent was on notice of the importance of a reliable sponsor and had time and opportunity to obtain a detailed affidavit addressing all issues. In this case, the sponsor submitted the statement contained in Exhibit 4. The Court found no good cause to delay proceedings to the end of the docket to attempt to call the sponsor to testify when his affidavit was in the record, and the respondent was clearly previously on notice of the importance of a reliable sponsor and had time and opportunity to submit a detailed statement. Furthermore, even if the respondent's sponsor had testified, to provide information omitted from the affidavit or to amend assurances, the Court finds such testimony would not have overcome the other negative flight risk factors here which include minimal community support, two letters from self-interested parties, no family ties in the United States, and an only approximately two year and four month period of residing in the United States. Otherwise stated, the Court finds the respondent did not establish the testimony would have been material, as a statement was in the record, and the Court considers all factors for flight risk under the law.

The Court notes that had the sponsor testified inconsistently with his declaration to clarify or add additional details previously omitted it would have only undermined his reliability as a witness and sponsor. If he had testified consistently with the affidavit, that information is already in the record. Even if the Court were to consider that the sponsor intended to convey that should housing be required, he was willing to provide it, and not that support was contingent on residing with the respondent, the Court finds it would not overcome the negative flight risk factors in this case of minimal community ties, lack of significant time in the United States, and two letters in support of bond from interested parties. Further, given the business association with the respondent, as opposed to a family member, or family friend, the Court finds the respondent's sponsor not sufficiently significant to meaningfully mitigate flight risk.

The respondent raised issues related to his mental health. His declaration indicated suicide attempts while in custody. See Exh. 7 at 5. However, on September 16, 2026, the respondent testified under oath he did not attempt suicide when detained. Rather he has experienced suicidal ideations. Further, he testified that his prior attempt of self-harm occurred prior to his immigration detention. The Court finds this ultimately

to be a neutral flight risk factor.

Having considered the totality of the record, the Court finds when considering all of the factors set forth in Matter of Guerra, supra, the respondent did not meet his burden of proof to establish he is not a flight risk such that bond should not be set. Accordingly, the respondent's request for bond is DENIED.

☐ Granted. It is ordered that Respondent be:
- ☐ released from custody on his own recognizance.
- ☐ released from custody under bond of $
- ☐ other:

☐ Other:

Immigration Judge: Wells, Nicole 09/16/2026

Appeal: Department of Homeland Security: ☐ waived ☐ reserved
Respondent: ☐ waived ☐ reserved

Appeal Due:

**Certificate of Service**

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS
Respondent Name : ZENG, KECE | A-Number : 234-611-952
Riders:
Date: 09/16/2026 By: Pereira, Jalyn, Court Staff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-5044-SK Date: September 3, 2026
Title Kece Zeng v. Mark Bowen, et al.

Present: The Honorable: Steve Kim, United States Magistrate Judge

| A. Silva-Elder | n/a |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s)/Petitioner(s): | Attorneys Present for Defendant(s)/Respondent(s): |
| --- | --- |
| None present | None present |

**Proceedings:** (IN CHAMBERS) **ORDER CONDITIONALLY GRANTING PETITION IN PART (BOND HEARING)**

The petition for a writ of habeas corpus under 28 U.S.C. § 2241 is CONDITIONALLY GRANTED IN PART. Consistent with the alternative form of requested habeas relief (ECF 1 at 9, 10; Pet. ¶¶ 34, 40), Petitioner **Kece Zeng (A# 234-611-952)** is ordered release from custody within 14 days of this order, unless he is provided an individualized bond hearing under 8 U.S.C. § 1226(a) with at least 7 days' written notice of the hearing date, so that petitioner can prepare for the hearing, compile the needed documents in support of his bond request, and (if he so chooses) secure retained immigration counsel's appearance at that hearing. Partial judgment in petitioner's favor will be entered accordingly.[1]

IT IS SO ORDERED.

[1] No motion to enforce the court's judgment following the bond hearing ordered here, or a new habeas petition challenging the outcome of that bond hearing, will be entertained without a certified transcript of the hearing or at least an authenticated copy of the digital audio recording of that hearing. Nothing in that instruction, however, should be construed as addressing—one way or the other—whether this court would have jurisdiction to review the challenge or whether administrative exhaustion should be enforced. Otherwise, the court retains jurisdiction over any new petition filed by petitioner in this district so long as he is in continuous custody of the government within the Central District of California based on the same events alleged in the petition now decided.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

KECE ZENG,

Petitioner,

v.

MARK BOWEN, et al.,

Respondents.

Case No. 5:26-cv-5044-SK

**JUDGMENT**

Pursuant to the Order Conditionally Granting Petition in Part, IT IS ADJUDGED that Petitioner **Kece Zeng (A# 234-611-952)** is to be released from custody within 14 days of that Order, unless he is provided an individualized bond hearing under 8 U.S.C. § 1226(a) with at least 7 days' written notice of the hearing date.

The Court Clerk is directed to close the case.

DATED: September 3, 2026

STEVE KIM
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

KECE ZENG,

Petitioner,

vs.

WARDEN, et al.

Respondents.

CASE NO. 5:26-cv-05044-SK

**ORDER DENYING PETITIONER'S EX PARTE APPLICATION TO ENFORCE CONDITIONAL HABEAS JUDGMENT AND FOR IMMEDIATE RELEASE OR ALTERNATIVE EXPEDITED RELIEF [ECF 8]**

Petitioner seeks emergency ex parte relief enforcing the court's September 3, 2026 judgment conditionally granting a writ of habeas corpus for his release, unless petitioner were provided an individualized custody redetermination hearing before an immigration judge under 8 U.S.C. § 1226(a). Having listened to the digital audio recording of that hearing, the court sees no evidence that the hearing didn't comply with the conditions of the court's judgment. Nor is there any basis to find that petitioner was denied procedural due process. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

Procedures aside, whether the immigration judge should have granted release on bond under the relevant *Guerra* factors—based on the factual record and counsel's arguments—is a different substantive question. But it is one that presents an outcome-dependent challenge to a discretionary judgment that this court has no jurisdiction to review. *See* 8 U.S.C. § 1226(e);

*Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024); *Fan v. Bondi*, --- F. Supp. 3d ---, 2026 WL 2276462, at *14 (C.D. Cal. Aug. 6, 2026). And to the extent that petitioner's challenge to the outcome of the bond hearing would mean judicial review of disputed findings of fact, § 1226(e) strips federal courts of jurisdiction to undertake such review, as well. *See Patel v. Garland*, 596 U.S. 328, 339–40 (2022); *Martinez*, 124 F.4th at 782-83.

To be sure, federal courts (in the Ninth Circuit) retain limited jurisdiction to review, as a mixed question of law and fact, whether the immigration agency abused its discretion in the application of law to "a given set of undisputed facts." *Urias-Orellana v. Bondi*, 607 U.S. 537, 545 (2026); *see Martinez*, 124 F.4th at 783-84. But even then, petitioner must ordinarily present that claim on appeal to the Board of Immigration Appeals (BIA) first—the administrative agency designed to address such a claim before federal court involvement. *See* 8 C.F.R. § 1003.1(d)(3)(ii); *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). That administrative appeal can even include contentions that the immigration judge committed procedural errors at the bond hearing (e.g., continuances of the hearing or presentation of additional witnesses). *See Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007). Thus, all the established reasons to enforce exhaustion—"to generate a proper record," to discourage "deliberate bypass of the administrative scheme," and to allow the agency "to correct its own mistakes" first—apply with full force here. *Puga*, 488 F.3d at 815; *see McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.").

On the other hand, petitioner presents no meaningful arguments to waive exhaustion. While exhaustion is admittedly not jurisdictional, *see Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017), that doesn't make it any less a mandatory case-processing rule. *See Laing*, 370 F.3d at 998. Besides, "in the mine-run of immigration detention cases, exhaustion is essential to ensuring that federal habeas courts remain Article III courts of limited *collateral* review—not de facto administrative boards of *direct* review functionally no different than the BIA." *Fan*, 2026 WL 2276462, at *15. "Beyond unusual or exceptional cases, then, exhaustion of administrative remedies should be the norm for ordinary case- or petitioner-specific challenges to bond denials based on the individual and specific facts of a single case." *Id.* at *10. Yet petitioner makes no convincing case to depart from that rule here.

Finally, even if this court were to review directly the immigration judge's application of the *Guerra* factors to the factual record at petitioner's bond hearing, it would find no abuse of discretion. Under the applicable abuse-of-discretion standard of review, this court cannot reweigh the evidence. *See Martinez*, 124 F.4th at 785. Nor does that standard permit second-guessing the outcome of a bond hearing. *See id.* Instead, abuse-of-discretion review in the immigration detention context performs a function comparable to the substantial-evidence standard used elsewhere in immigration cases. *See Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1004-05 (9th Cir. 2025). Under that exceedingly deferential standard, this court "must uphold the agency determination unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019); *cf.* 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

Whether another immigration judge—or even this court—might have characterized, evaluated, or weighed flight-risk factors differently and reached the opposite conclusion is not the standard for habeas relief. Rather, it is whether *this* immigration judge's discretionary judgment falls outside the range of outcomes an objectively reasonable adjudicator could reach on the same record. *See Gonzalez-Juarez*, 137 F.4th at 1001–02; *see also Nasrallah v. Barr*, 590 U.S. 573, 584 (2020) ("substantial-evidence standard" means agency decision is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary") (cleaned up). Having heard the recording of the bond hearing, the court cannot say that no reasonable adjudicator could have found petitioner to be a flight risk based on the given facts. Thus, based on the existing interim administrative record, the court cannot find that petitioner's evidence "compels" the conclusion that he must be released pending removal proceedings. *Torres-Casas v. Blanche*, 182 F.4th 1121, 1134 (9th Cir. 2026).

That doesn't mean, of course, that the BIA might not see things differently—as is its prerogative—on direct administrative review. If anything, that is all the more reason why administrative exhaustion should be enforced here. Not only does it permit the immigration agency to correct its own mistakes without federal court intervention, it "ensures that the federal courts have an adequate object of review" if such intervention is called for and "can meaningfully review the BIA's considered judgment rather than try to reconstruct an immigration judge's reasoning from an incomplete (or inaccessible) record." *Fan*, 2026 WL 2276462, at *9. "To be sure, the court is mindful that requiring exhaustion means that petitioner will remain detained during the pendency of a BIA appeal—a consequence that is neither trivial nor cost-free." *Id.* at *15. But the "alternative—excusing exhaustion as a matter of course in most cases whenever a detainee alleges procedural error at a bond

hearing—would convert federal habeas proceedings into a parallel appellate track for immigration judges' bond decisions, precisely the outcome that § 1226(e) was enacted to prevent." *Id.* "So whatever real or perceived harshness there is in the time it takes for administrative review to finish—which exists in any legal setting, not just in immigration proceedings—it is intrinsic to the process and applies across the board to all similarly situated detainees." *Id.* So it is here.

* * *

For all these reasons, petitioner's ex parte application to enforce the court's judgment or for other emergency relief including immediate release is (ECF 8) is denied.

IT IS SO ORDERED.

DATED: October 5, 2026



STEVE KIM
United States Magistrate Judge